## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 07 2016, 9:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William S. Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 7, 2016

Court of Appeals Case No.
49A02-1603-CR-656

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1502-MR-643

**Crone, Judge.**

# Case Summary

[1] A jury found William S. Smith guilty of murder, carrying a handgun without a license, and marijuana possession. Smith now appeals, claiming that the State failed to present sufficient evidence that he committed murder. We conclude that a reasonable finder of fact could have found Smith guilty beyond a reasonable doubt, and therefore we affirm his murder conviction.

# Facts and Procedural History

[2] The relevant facts most favorable to the jury's verdict follow. Smith started dating Azya Knowles in the summer of 2014. They lived approximately one block apart in Indianapolis, and Knowles would occasionally stay at Smith's house. At some point during the relationship, Knowles told her friend, Uniquewa Rogers, that Smith had pulled a gun on her. In February 2015, Rogers noticed that Knowles "wasn't herself" and was acting like "something was wrong." Tr. at 362, 363. Knowles stayed inside Smith's house for three days and refused Rogers's requests to come outside, which Rogers found "unusual." *Id*. at 369.

[3] On February 10, Rogers and Knowles's brother, Logan, went to Smith's house and talked to Knowles through an open window. Knowles asked Logan to bring her food, clothes, and a gun. Logan went to Knowles's house and put food, clothes, and Knowles's .22-caliber handgun in a duffel bag. He returned to Smith's house and handed Knowles the bag through the open window.

[4] At approximately 11:30 a.m. on February 11, Pastor Marvin Churchwell saw Smith driving a pickup truck past his church in Indianapolis's Haughville neighborhood. The truck's windshield was damaged and appeared to have been "shot at," and there was a hole in the bottom of the passenger's window, which was shattered. *Id*. at 170. Shortly afterward, the pastor saw Smith drive by the church a second time. As the pastor was leaving the church between 12:00 and 12:30 p.m., he saw Smith drive by a third time. Pastor Churchwell did not see anyone in the passenger's seat.

[5] At approximately 1:30 p.m., Smith drove up to the City-County Building in downtown Indianapolis, which is approximately a ten- to fifteen-minute drive from Haughville. He had a .380-caliber semiautomatic handgun in his hand and yelled, "Man they was shooting at me." *Id*. at 87. Officer Christopher Wilburn drew his gun and told Smith to drop his weapon and stop the truck. Smith replied, "I'm just trying to show you my gun. They shot at me." *Id*. at 89.[1] Smith also said that he had $30,000 in cash in the truck. Sheriff's deputies put the truck in park and removed Smith from the vehicle. Smith dropped his handgun on the driver's seat.

[6] Officer Wilburn approached the truck and saw Knowles lying on the passenger floorboard. She had been shot three times: once in the forehead, once in the left temple, and once behind the left ear. Officer Wilburn saw "a lot of blood"

---

[1] Smith asserts that "[t]here were bullet holes in the truck's sides." Appellant's Br. at 7 (citing Tr. at 87-88). The cited transcript pages do not support this assertion. Detective Charles Benner testified that he inspected the truck's body and found no "bullet strikes" outside the windows. Tr. at 496.

on the passenger seat and inside the truck cab. *Id*. at 95. As Knowles was being removed from the truck, a .22-caliber shell casing fell to the ground. Another .22-caliber casing was found between the passenger's seat and the center console. Both casings had been fired from the same weapon. Police did not find a .22-caliber firearm.

[7]     Smith told a deputy, "I didn't do this, uh, the niggas in the hood shot her, they were coming after me, but they shot her." *Id*. at 146. He told another deputy that he had been chased "by people from Haughville" who "were shooting at him" and that he "didn't know what to do so he came to the cops for help." *Id*. at 158. He repeatedly asked, "[I]f I shot her, why would I bring her here? Why would I bring her here?" *Id*. at 148. Police had received no reports of shots being fired in Haughville and found no evidence to support Smith's claim that he had been chased and shot at. A forensic expert tested five impact sites on the truck's windshield, three of which were consistent with bullets being fired from inside the truck and two of which were inconclusive.[2] Police searched Smith's truck and found $30,000 in cash, marijuana, an unfired .380-caliber cartridge, a .380-caliber shell casing that had been fired from Smith's handgun, and Knowles's cell phone.

[8]     Knowles later died as a result of the shooting. Three .22-caliber bullets were recovered from her skull, all of which had been fired from the same weapon.

---

[2] The shattered passenger's window broke apart when the truck was towed to be searched pursuant to a warrant.

The small circular entry wounds were consistent with the bullets not penetrating a hard surface before they pierced her skull. The State's firearms expert was unable to match the bullets to the .22-caliber shell casings because they "don't do that at [her] laboratory." *Id*. at 279.

[9] The State charged Smith with murder, carrying a handgun without a license, and marijuana possession. Smith represented himself at trial. A jury found him guilty as charged. This appeal followed.

## Discussion and Decision

[10] The State alleged that Smith committed murder by knowingly killing Knowles. Appellant's App. at 24; Ind. Code § 35-42-1-1. Smith claims that the State failed to prove beyond a reasonable doubt that he was the person who killed Knowles. Our standard of reviewing challenges to the sufficiency of the evidence is well settled. "When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. We do not reweigh the evidence or assess witness credibility." *Wilson v. State*, 39 N.E.3d 705, 716 (Ind. Ct. App. 2015) (citation omitted), *trans. denied*. "We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. "A conviction may be based upon circumstantial evidence alone." *Id*. "It is not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id*. (citation omitted). Testimony tending to show a defendant's

attempt to conceal incriminating evidence or to manufacture exculpatory evidence may be considered by the jury as evidence of consciousness of guilt. *Hughes v. State*, 546 N.E.2d 1203, 1208 (Ind. 1989).

[11] Smith essentially claims that his conviction is based on speculation: "while [the] State did present evidence that Ms. Knowles was killed by .22 caliber bullets, it presented no evidence that Smith ever touched or had access to any .22, let alone the .22 that killed Ms. Knowles – a gun the State failed to produce at trial." Appellant's Br. at 14. Based on the circumstantial evidence and reasonable inferences most favorable to the jury's verdict, a reasonable finder of fact could conclude as follows: Smith, who had pulled a gun on Knowles before, shot her in the head three times with her .22-caliber handgun, which her brother had brought her the day before. Smith also fired at least three shots through the truck's windshield to make it look like she had been shot by someone outside the vehicle, but the forensic evidence indicates otherwise. Smith discarded Knowles's handgun and at least one .22-caliber shell casing but overlooked the two that were later found in the truck.[3] Pastor Churchwell saw Smith's truck with a damaged windshield and passenger's window two hours before Smith arrived at the City-County Building, and no evidence was found to support Smith's claim that he had been chased and shot at while driving in Haughville. Based on the foregoing, we conclude that there is ample circumstantial evidence from which a reasonable inference could be drawn to

---

[3] The State points out that "[i]t is highly improbable if not impossible for two shell casings shot from another moving vehicle to land inside Smith's truck." Appellee's Br. at 17.

support the jury's guilty verdict. Therefore, we affirm Smith's murder conviction.

[12] Affirmed.

Riley, J., and Altice, J., concur.